AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>INFORMATION ASSOCIATED WITH THE CELLULAR<br>DEVICE ASSIGNED CALL NUMBER 415-640-8583 THAT<br>IS STORED AT PREMISES CONTROLLED BY AT&T | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 23-MJ- 57 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT "A"

located in the _____ Southern _____ District of _____ Florida _____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 846 | Drug Trafficking Violations |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jessica Sullivan, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone conference_____ *(specify reliable electronic means).*

Date:  June 1, 2023
_____
*Judge's signature*

City and state:  Baton Rouge, Louisiana

Richard L. Bourgeois, Jr., U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Jessica Sullivan, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **415-640-8583** (the "**TARGET TELEPHONE**"), whose service provider is AT&T, a wireless telephone service provider at 11760 US Highway 1, STE. 600, North Palm Beach, Florida 33408. As a result of an investigation by the Federal Bureau of Investigation ("FBI"), it was learned that the **TARGET TELEPHONE** is being utilized by **MOHAMMAD MASHOOD SHARIFI, a/k/a "Moe," a/k/a "Bankrollmoe" ("SHARIFI")**. The **TARGET TELEPHONE** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. §§ 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3.      I am a Special Agent ("SA") with the FBI and have been so employed since approximately January 2010. My current responsibilities include the investigation of violent crimes, including, among other offenses, kidnaping, bank robbery, firearm offenses, and the apprehension of violent fugitives. I have received training in the areas of narcotics, money laundering, and financial investigations and the various methods which drug dealers use in an

1

effort to conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated in numerous investigations involving violations of narcotics laws.

4.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.     Based on the facts set forth in this affidavit, there is probable cause to believe that **SHARIFI** has violated, *inter alia*, Title 21, United States Code, Sections 841(a)(1) and 846. There is also probable cause to believe that the location information described in Attachment B will assist law enforcement in physical surveillance and the arrest of **SHARIFI** pursuant to an Arrest Warrant issued in the Middle District of Louisiana in case number 23-mj-52.

6.     The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offenses being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

7.     The United States, including the FBI, is conducting a criminal investigation of **SHARIFI** and others regarding possible violations of, among other federal criminal laws, Title 21, United States Code, Sections 841(a)(1) and 846.

8.     On or about May 9, 2023, United States Magistrate Judge Erin Wilder-Doomes, in case number 23-MJ-49, signed a search and seizure warrant authorizing the United States to search and seize geolocation information from a cellular telephone assigned call number 415-290-1187,

IMSI[1] 310280067832233, and service provided by AT&T, which I determined was being used by **SHARIFI** (hereinafter referred to as "SHARIFI Cell-Site Location Warrant 1"). A copy of the SHARIFI Cell-Site Location Warrant 1 Application, Affidavit, and Warrant is attached hereto as Exhibit A and the facts are incorporated as if set out fully herein.

       9.       After Agents served the SHARIFI Cell-Site Location Warrant 1 on AT&T, I was advised by AT&T that **SHARIFI** ceased using the cellular telephone identified in SHARIFI Cell-Site Location Warrant 1 and was now using a cellular telephone assigned call number 415-640-8583 – the **TARGET TELEPHONE**. Pursuant to AT&T's response to an Administrative Subpoena on May 30, 2023, all subscriber information for the **TARGET TELEPHONE,** to include the account number, IMSI, and all other account identifying information, is identical to that which was associated with 415-290-1187, the call number originally assigned to the cellular telephone for which Judge Wilder-Doomes authorized SHARIFI Cell-Site Location Warrant 1. Specifically, AT&T responded as follows with regard to the **TARGET TELEPHONE**: Subscriber Ken James, User Ken Block, 1 Powel Street, San Francisco, California, email noneyaemail@gmail.com, IMSI 310280067832233, account number 436194140925; account activated on May 2, 2023.[2] I aver that **TARGET TELPHONE's** service began the same day service for 415-290-1187 was discontinued. I assert this shows that **SHARIFI** changed phone numbers soon after there was a drug seizure in this case, which occurred on or about April 25, 2023, in Baton Rouge, Louisiana. I know, based on my training and experience, that individuals

---

[1] An International Mobile Subscriber Identity ("IMSI") is a unique fourteen-to-fifteen-digit number identifying a mobile device that is transmitted to a service provider's cell tower.

[2] In this instance, the IMSI has not changed. Rather, **SHARIFI** has simply changed the call number assigned the device he used to contact his co-conspirators including his co-defendant, Robert PENNYWELL.

involved in drug trafficking routinely "drop" phones or change phone numbers to conceal their identity when drugs are seized.

10.    On or about May 18, 2023, United States Magistrate Judge Scott D. Johnson, in case number 23-mj-52, in the Middle District of Louisiana, signed an arrest warrant for **SHARIFI**, based upon a complaint alleging a violation of Title 21, United States Code, Section 846, Conspiracy to Possess with Intent to Distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl. **SHARIFI** and his alleged co-conspirator Robert PENNYWELL ("PENNYWELL") are named in that complaint. A copy of the Criminal Complaint and Affidavit in support thereof is attached hereto as Exhibit B, and the facts are incorporated as if fully set out herein. **SHARIFI** is a fugitive.

11.    On or about May 25, 2023, United States Magistrate Judge Richard L. Bourgeois, Jr. issued a search and seizure warrant for a cellular telephone belonging to PENNYWELL in case number 23-mj-53, in the Middle District of Louisiana.  Pursuant to that search warrant, agents forensically searched PENNYWELL's phone and uncovered text messages between PENNYWELL and 415-290-1187 -- the call number originally assigned to the cellular telephone for which Judge Wilder-Doomes authorized SHARIFI Cell-Site Location Warrant 1. Based upon agents' review of PENNYWELL's cellular telephone, the contact with 415-290-1187 appeared to stop on or about May 1, 2023. The forensic search also revealed that text communications with 415-640-8583—the **TARGET TELEPHONE**—started on or about May 2, 2023. The sender of the first text message from the **TARGET TELEPHONE** to PENNYWELL's cellular telephone stated, "this my new number bro."  I believe this text message was sent by **SHARIFI** to his co-conspirator PENNYWELL over the **TARGET TELEPHONE** on the same day that the **TARGET**

**TELEPHONE** account was activated, consistent with the above-referenced account information provided by AT&T on May 30, 2023.

12.    In sum, I assert that the facts set forth in this affidavit, together with the incorporated facts set forth in Exhibits A and B attached hereto, establish probable cause that **SHARIFI** and PENNYWELL, who was arrested pursuant to the criminal complaint and associated arrest warrant on or about May 18, 2023, agreed with each other and others known and unknown to possess with intent to distribute 400 grams or more of a substance containing a detectable amount of fentanyl. These facts also establish probable cause to believe that **SHARIFI** used or uses the **TARGET TELEPHONE** in furtherance of that criminal activity.

13.    In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the location of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic area) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

14.    Based on my training and experience, I know that AT&T can collect cell-site data about the **TARGET TELEPHONE**.  Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

15.    Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

16.    I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the **TARGET TELEPHONE** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined

6

in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

17.     I further request that the Court direct AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T. I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T services, including by initiating a signal to determine the location of the **TARGET TELEPHONE** on AT&T network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

18.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **TARGET TELEPHONE** outside of daytime hours.

19.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the

targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Jessica Sullivan, Special Agent
Federal Bureau of Investigation

Affidavit submitted by email/PDF and attested to me as true and accurate by telephone consistent with Federal Rules of Criminal Procedure 4.1 and 41(d)(3) on the 1st day of June 2023.

RICHARD L. BOURGEOIS, JR., MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

8

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Middle District of Louisiana

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 23-MJ-49 |
| INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (415) 290-1187 THAT IS STORED AT PREMISES CONTROLLED BY AT&T | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT "A"

located in the _____Southern_____ District of _____Florida_____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 846 | Drug Trafficking Violations |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jessica Sullivan, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: __May 9, 2023__

_____
*Judge's signature*

City and state: Baton Rouge, Louisiana

Erin Wilder-Doomes, U.S. Magistrate Judge
*Printed name and title*

U.S. Exhibit
A

**AFFIDAVIT IN SUPPORT OF**
**<u>AN APPLICATION FOR A SEARCH WARRANT</u>**

I, Jessica Sullivan, being first duly sworn, hereby depose and state as follows:

**<u>INTRODUCTION AND AGENT BACKGROUND</u>**

1.     I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(415) 290-1187**[1] (the "**TARGET TELEPHONE**"), whose service provider is AT&T, a wireless telephone service provider at 11760 US Highway 1, Suite 600, North Palm Beach, Florida 33408. As a result of a Federal Bureau of Investigation investigation, it was learned that the **TARGET TELEPHONE** is being utilized by **MOHAMMAD MASHOOD SHARIFI, a/k/a "Moe," a/k/a "Bankrollmoe" ("SHARIFI")**. **TARGET TELEPHONE** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.     Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. §§ 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3.     I am a Special Agent ("SA") with the United States Department of Justice, Federal Bureau of Investigation ("FBI"), and have been so employed since approximately January 2010.

---

[1] Subscriber information for (415) 290-1187 provided by AT&T on May 1, 2023, stated the following: Subscriber Ken James, User Ken Block, 1 Powel Street, San Francisco, California, email noneyaemail@gmail.com.

My current responsibilities include the investigation of violent crimes, including, among others, kidnaping, bank robbery, firearm offenses, and the apprehension of violent fugitives. I have received training in the area of narcotics, money laundering, and financial investigations and the various methods which drug dealers use in an effort to conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated in numerous investigations involving violations of narcotics laws.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.      Based on the facts set forth in this affidavit, there is probable cause to believe that **SHARIFI** has violated Title 21, United States Code, Sections 841(a)(1) and 846.  There is also probable cause to believe that the location information described in Attachment B will assist law enforcement in physical surveillance of **SHARIFI.**

6.      The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offenses being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

## **PROBABLE CAUSE**

7.      The United States, including the FBI, is conducting a criminal investigation of **SHARIFI** and others regarding possible violations of, among other federal criminal laws, Title 21, United States Code, Sections 841(a)(1) and 846.

8.      In January 2023, agents of the FBI, along with officers with the Louisiana State Police ("LSP"), East Baton Rouge Sheriff's Office ("EBRSO"), and Baton Rouge Police Department ("BRPD"), began to utilize court-ordered Title III interceptions in furtherance of a narcotics investigation involving Edward Shaffett, ROBERT PENNYWELL ("PENNYWELL"), and others for trafficking narcotics in the Baton Rouge, Louisiana area. During the investigation, monitors have learned that PENNYWELL lives in the Zachary, Louisiana area and distributes Schedule I and II controlled substances, including heroin, fentanyl, cocaine, prescription pills, and marijuana, to and from various residences and individuals in the Middle District of Louisiana. During the investigation, a co-conspirator/possible source of supply has been identified as **SHARIFI**[2].

9.      On or about March 16, 2023, Chief United States District Judge Shelly D. Dick of the United States District Court for the Middle District of Louisiana signed an order authorizing the interception of wire communication occurring over TARGET TELEPHONE THREE, a cellular telephone assigned telephone number (225) 371-0522, which agents believed was being used by PENNYWELL. On April 18, 2023, United States District Judge Brian A. Jackson of the United States District Court for the Middle District of Louisiana singed an Order authorizing continued interceptions over TARGET TELEPHONE THREE.  Interception is currently ongoing.

---

[2] Agents were able to identify **SHARIFI** as the user of the **TARGET TELEPHONE** by reviewing PENNYWELL's Instagram Account "blackbo_rob," which follows "Bankrollmoe_." Photos of **SHARIFI** were compared to the Instagram Account "Bankrollmoe_" and a positive identification was made. Review of "Bankrollmoe_" also showed **SHARIFI** following known associates of PENNYWELL; intercepted calls with the user of the **TARGET TELEPHONE** have also referred to the same associates. The user of the **TARGET TELEPHONE** has indicated he is of Middle Eastern descent and from the Oakland area of California; **SHARIFI** has referenced his Middle Eastern descent in his Instagram content. The user of the **TARGET TELEPHONE** has indicated he has an outstanding warrant for his arrest; **SHARIFI** has a current arrest warrant for failure to appear in Solana County, California for weapons charges. **SHARIFI** also has a prior felony conviction for possession of narcotics in a penal institution.

3

10.    Interceptions over TARGET TELEPHONE THREE enabled law enforcement to confirm that **SHARIFI** was a possible a co-conspirator in PENNYWELL's drug trafficking activities. In particular, I believe the intercepted calls suggest that **SHARIFI** supplies drugs to PENNYWELL and has connections to individuals in Southern California who are likely connected to a Mexican drug cartel. The pertinent calls below reflect that relationship and aid in establishing probable cause for the warrant herein requested[3].

11.    On or about April 19, 2023, at approximately 1:00 p.m., PENNYWELL received an incoming call from the **TARGET TELEPHONE**, believed to be used by **SHARIFI**, with the following content beginning approximately forty seconds into the call:

...

**SHARIFI**: So basically, you know so these people what they do is they be doin' like the whole situation like I was tellin' you right.

PENNYWELL: Right

**SHARIFI**: The problem is, my boy tellin' me look I'll help you with some bread, you feel me, I'll even show you the messages, like this my dude he Afghan too. You get what I'm sayin'. This my peoples. He live in San Diego. He tapped in. He even got the line on the "windows" and everything you get what I'm sayin'? The "clear" and shit the "water." Um, you hear me?

PENNYWELL: Right

**SHARIFI**: But basically the only problem is, so he like I'll go in with you on the other half. He's like I got some bread too I can put in. But what I was tryin' to do was have him go in with me. I was gonna use some of his money to [go] in on the half, right. But when they said we gotta get to get the whole situation he's like fuck it. So, he didn't know that I didn't have all, that I was just a little bit short for the half but I'm like if you go in with me, I was like you could make you a band or two I'm not trippin' you feel

---

[3] Transcriptions are preliminary and are subject to change.

me. He's like no I'm makin' hella profit margin, you feel me. But I told him I was like you know, I'm thinkin' he's gonna go in with me on the half but he like look I'll pay for the other half. So now I'm a little bit short on my half does that make do you know what I'm sayin'? So, the thing is he tryin'

PENNYWELL: [*Unintelligible*] half on a half but its half on a whole.

**SHARIFI**: On a whole one but he don't know I'm a little bit shy. But what he was tellin' me, he was like look bruh, these your people's 'cause I'm like yeah you know you my n****, everything good. I can't afford no hiccups on your not on my end, on your end over there. You get what I'm sayin'?

PENNYWELL: Yeah yeah yeah. Man, it's good. I can

**SHARIFI**: Look look look basically I'm like I got like eleven grand right, to my name. Rob, I'm willing to put my money, you know what I'm sayin'? I'm gonna put up ten grand, I need to keep a band in my pocket you get what I'm sayin'. Just for a couple days just to hold me off. I'm not trippin' I know everything good. But look Rob please listen to me. Look this is what I'm tellin' you, Rob you know I keep it a thousand with you as much as I can. Brother if he puts up his bread you gotta make sure like we get these people out the way first. So, I can show them that its good you get what I'm sayin'?

PENNYWELL: Yeah facts

**SHARIFI**: Because like, bruh

PENNYWELL: I'm sayin' I'm good. That's what I'm, look your people when the situation come your people comin'?

**SHARIFI**: Yeah yeah so I'm gonna, that's the next part. Right now, I'm five grand short, I need to send him five grand, bro, to San Diego. So, they can send that thing off. Then once it comes to you, then I'm gonna send somebody to pick up, I'll give you a day or so just so you can get some money together. Because I told him don't send the whole situation, I said send it half and then another half. Just so we can be on the safe side you know what I'm sayin'?

PENNYWELL: Alright

5

**SHARIFI**: So, we don't put all our eggs in one basket. So, he gonna send the half, once the half lands, the next day he gonna send the other half whether it's to the same address or a different address it don't matter. You get what I'm sayin'? But this is the company the direct company like you get what I'm sayin'. They makin' sure it gets there and everything. They are doin' the shipping labels and all that shit. You know what I'm sayin'?

PENNYWELL: Right

**SHARIFI**: But now I'm five grand short on my end for to send him the bread so it could go out. Because he is puttin' up his money, I never told him that I was even short on the half, so you get it? But he was like I'm just gonna send the whole thing out I said whoa hold on one second. I said give me second let me get back to you. 'Cause he like bro come to, remember yesterday I was driving to L.A. with my cousin I told we took the [unintelligible]. I was goin' down there also to give him the bread so we could get this out today but now its gonna get packaged today and its gonna go out first thing in the morning. They are gonna to pay for overnight service, like their company is paying for all that. It's probably gonna cost like $500 just to overnight that shit but they are doing it. Like they are packaging everything and get it to you. I promise you everything is good like a 100%. But I'm tryin' to get this to land to you now by Friday 'cause it's going to go out tomorrow you get what I'm saying but I'm five grand I gotta give him 5 grand. And the rest I'm gonna have somebody come pick it up from you probably Saturday when I give you a day or maybe Friday night or some shit. That's why I was wanting you to have some plays lined up 'cause he's not knowing that we not cashing all the way out on a whole one but whatever the majority or whatever the most money we can get to him and I'm gonna tell him my n**** good like he got motion. Give him a few days or whatever they gonna get the shit done.

PENNYWELL: Fuckin' right.

**SHARIFI**: I just gotta get, I just gotta shoot him, he don't even like doin' bank shit but I told him bruh just let me do it one time. If I can get you the money on CashApp or Zelle next time I'll bring you the money you know just this one time. Let me just try to figure something out. I got 10 bands on me, you know like eleven grand, I'll just move five bands just to fill it. and you can pay the rest when the shit lands.

PENNYWELL: Yeah

6

SHARIFI: But it's a 1000% that it will land on Friday or Friday morning. 1000% bro.

PENNYWELL: Shit. We will just do what we gotta do to make that bitch land.

SHARIFI: Yeah, I promise you bro like n**** I'm puttin' like

PENNYWELL: I got like umm I got like three bands on uh on fuckin' uh what's that shit called? Man, what's that shit I used last time?

SHARIFI: CashApp?

PENNYWELL: No not CashApp

SHARIFI: Zelle? Apple pay what is it?

PENNYWELL: Venmo.

SHARIFI: Venmo. I think he uh he might have Venmo I can call him. I gotta call the guy. I'm up for [*unintelligible*] the earlier we get shit done.

PENNYWELL: See if he got Venmo 'cause I got three racks on my phone right now.

SHARIFI: Lemme call you right back. Answer your phone 'cause I'm gonna call you right back.

PENNYWELL: A'ight

12.    I believe that during this call, **SHARIFI** explains to PENNYWELL he has a supplier in San Diego who can provide him with multiple types of drugs to include "windows" and "clear," which I believe, based on my training and experience, is coded language for methamphetamine. **SHARIFI** explains to PENNYWELL that he is investing $10,000 towards a half of a kilogram of an unknown narcotic and he needs another $5,000 from PENNYWELL to complete the purchase. I further believe that this call shows PENNYWELL and **SHARIFI** have a pre-existing drug trafficking relationship and, in this instance, are discussing how they could pool money to purchase possibly cocaine (or at this time another unknown drug) from a source of supply with whom **SHARIFI** has an existing drug supply relationship. I believe **SHARIFI** explains that

7

if PENNYWELL contributed $5,000, he would receive "a half and then another half" to be safe, which I believe means there would be two deliveries of drugs to PENNYWELL – a half kilogram and then a second half kilogram for a total of one kilogram. **SHARIFI** notes that this was the way to stay on the "safe side," meaning either that the money will not be ready in time to send to the source or that if a drug seizure occurred it would not result in a total loss of one kilogram.

13.　　In addition, I believe **SHARIFI** expresses some concern about the arrangement and wants to make sure that PENNYWELL has some "plays" – drug sales – lined up because they will be shorting the supplier some funds and he wants to resolve that debt as quickly as possible. I believe this shows **SHARIFI** wanting to keep his supplier from getting upset and either cutting him off from future supplies or taking other action. **SHARIFI** assures PENNYWELL that if they partnered to buy these drugs, a package containing drugs would arrive in Baton Rouge by that Friday, which was April 21, 2023. I also note that **SHARIFI** explains to PENNYWELL that the source is trustworthy and that the package would arrive – "1000%". I believe this shows **SHARIFI** trying to convince PENNYWELL to join him on this transaction. Similarly, I note that **SHARIFI** telling PENNYWELL that he is spending "ten grand" of his own money was intended to induce PENNYWELL's investment. I also point out that **SHARIFI** referred to his supplier as "my dude" and that the source is "Afghan too." **SHARIFI** also called the source "my peoples." These statements reflect a pre-existing relationship and comfort level between **SHARIFI** and the unidentified source. I believe these statements were part of **SHARIFI** making PENNYWELL comfortable with the investment.

14.　　Finally, I note that **SHARIFI** tells PENNYWELL that the source lived "in San Diego" and was "tapped in." I believe these statements show the source lives close to the United States and Mexican border in California and that the source has a direct supply link in Mexico,

which likely means a cartel source in Mexico. **SHARIFI** also notes that the source of supply's "company" will pay for "overnight service," stating "like their company is paying for all that. It's probably gonna cost like $500 just to overnight that shit but they are doing it. Like they are packaging everything and get it to you." I believe this shows a partnership arrangement with a defined entity – the "company" – as the partner responsible for sending drugs to PENNYWELL and **SHARIFI**. I also believe this shows a larger in scope conspiracy involving **SHARIFI's** source of supply and the "company." The call ends with reference to the payment that PENNYWELL will make to complete the transaction. In that regard, PENNYWELL tells **SHARIFI** that he can send funds via Venmo and that he has "3 bands," or $3,000, in his Venmo account. I believe **SHARIFI** ends the call so that he could confirm with his source of supply that they would or could accept Venmo.

   15.    On or about April 19, 2023, at approximately 1:19 p.m., PENNYWELL received an incoming call from the **TARGET TELEPHONE**, believed to be **SHARIFI**, with the following content:

> PENNYWELL: What up?
>
> **SHARIFI**: What up he just called me. He said he's gonna find a Venmo. I told him to find me a Venmo and like a Cash App you feel me. And he is uh literally go pick the situation up 'cause he is in San Diego so that is like 2 hours from L.A. he just called the lady on the phone I heard him, she told him to come pick it up in a few hours. So umm and then it's gonna go out in the morning and it's gonna be next day feel me? This is the direct company bro, she tell me like this is the company, like there is no middleman like I told my boy once my boy gets this shit goin', gets his shit rollin' again.
>
> PENNYWELL: But you don't know what it do though?
>
> **SHARIFI**: It's probably, look this is a 750 so its prolly taking like a shit that's powerful bro. That's more than the one I sent last time when shit was taking a 6 them bitches was 600s so these are like 750 you hear me

9

so. Probably gonna take like a 6 bro. To be real with you. I don't know if you are tryin' to go all the way with it so you can serve your fiends you get what I'm sayin'?

PENNYWELL: Yeah I ain't tryin' to go to. I'm tryin' to get your people their money back.

**SHARIFI**: That's it, once I show them like really my boy, 'cause technically this shit 'bout to be paid for you get what I'm sayin'? Between me and him that shit 'bout to paid for all the way. But I'm tellin' my boy I'm gonna get him out the way. That's why I'm tellin' you Rob I'm really puttin' up you know how it be when you puttin' up your last Rob you get what I'm sayin'?

PENNYWELL: Man, I could put a mother fuckin' one and a half on that bitch and put you a one and a half on that bitch and just…

**SHARIFI**: Nah its good do your thing I'm not even trippin' like you feel me? I know we all gonna make our little issues like it's cool you feel me. Just make sure we just, we work it like the objective is to get this shit paid and then we can do our shit you know what I'm sayin'.

PENNYWELL: Right right right my objective is to get that shit gone have some more money to send up.

PENNYWELL: [*Unintelligible*] I ain't got no money to send out, like once I get some money to send out I'm not givin' a fuck about the money.

**SHARIFI**: Nah you already know bruh, you already know a n**** ain't on some bullshit. But literally if I had the whole thing you know like I'm gonna keep a band to my name and my pocket just to have some change. That's why I wanna see it land on Friday, I know you will have another five on your end. And its whatever your people got like if we can get close to that, you know your people, getting' your plays lined up. It's so crazy my n**** just called be with some bags some good ass little dabs like you feel me? I'm like damn n****

16.     This call occurred immediately after the prior call concerning a drug transaction partnership involving **SHARIFI**, PENNYWELL, and **SHARIFI**'s source in Los Angeles/San Diego, California. I believe **SHARIFI** tells PENNYWELL that his source of supply will accept a

Venmo payment.[4] I believe **SHARIFI** then explains to PENNYWELL that his source was going to go "direct" to the source of supply on the Mexico / U.S. border and obtain the drugs. In that regard, he tells PENNYWELL that the source would drive from Los Angeles to San Diego and meet with a female supply source to obtain the drugs for **SHARIFI** and PENNYWELL. **SHARIFI** tells PENNYWELL, "[T]his is the direct company bro, she tell me like this is the company, like there is no middleman," which I assert means that **SHARIFI**'s source deals directly with the "company" who imports the drugs from Mexico. In this instance, I believe "company" likely refers to a cartel. This too demonstrates a larger conspiracy than PENNYWELL, **SHARIFI**, and **SHARIFI's** source (who is the middleman) in Los Angeles/San Diego, California.

17.    When PENNYWELL says, "[B]ut you don't know what it do though?" I believe he is alluding to **SHARIFI** not knowing the strength or quality of the drugs. I believe **SHARIFI** again assures PENNYWELL about the transaction when he states "[I]t's probably, look this is a 750 so its prolly taking like a shit that's powerful bro. That's more than the one I sent last time…" I believe this exchange shows the drugs will be of higher quality and more powerful than a prior shipment, which demonstrates a pre-existing supply/partnership between **SHARIFI** and PENNYWELL.

18.    Finally, PENNYWELL and **SHARIFI** discuss payment options when **SHARIFI** says, "[B]etween me and him that shit 'bout to paid for all the way. But I'm tellin' my boy I'm gonna get him out the way. That's why I'm tellin' you Rob." I note that this is also apparent when

---

[4] Records received from Venmo pursuant to Grand Jury subpoena show PENNYWELL sent $4,000 on April 20, 2023, to a recipient identified with email garettebell06@gmail.com with the note "car." I believe this represents the drug payment discussed in the above calls between **SHARIFI** and PENNYWELL and that the "memo" reference to "car" is intended to conceal the true nature of the transaction.

PENNYWELL says, "my objective is to get that shit gone have some more money to send up." I believe the call ends with **SHARIFI** explaining to PENNYWELL that he would invest all but a thousand dollars that he had on hand and that the package would be delivered on Friday (April 21, 2023).

19.    On or about April 20, 2023, at approximately 11:52 p.m., PENNYWELL received an incoming call from the **TARGET TELEPHONE**, believed to be **SHARIFI**, with the following pertinent content:

> **SHARIFI**: I was gonna say I talked to my dude he had called me, but um I was changing my tire when that shit basically. The person got there at 5 today. I told him I would send him that band and shit too I was like literally changing a tire and dealing with that tire and and all that shit and I told basically the person was at the Post Office at 5 they said they couldn't guarantee it tomorrow so they didn't drop the box off 'cause they wanted to talk with me first but it's going out first thing in the morning so it's gonna be there Saturday morning for sure. 100% its already confirmed the people called me.

> PENNYWELL: Damn man

> **SHARIFI**: Yea I was trying to get that shit for tomorrow, I kind of got some shit going too, but you know this like a new line with these people so I was like they're the ones that got the shipping and everything so it's like I just gotta go with the flow you get what I'm saying?

> PENNYWELL: [*unintelligible*]

> **SHARIFI**: Oh that's what I'm sayin' it's a house too it ain't no apartment right?

> PENNYWELL: Yea it's a house.

> **SHARIFI**: Yeah yeah yeah so they said because they said get there around 5 today, so initially I was going to get a 700 from them you feel me, I was going to get a 700 which is still hella powerful bro like and hella strong but he told me basically that they had a thousand available. I said

bro if you got a thousand available, I'd rather give my people the thousand you feel me? I'm like in Louisiana they want the stronger shit so he swapped out the 700 and went to go pick up a one thousand in San Diego. So that took a little bit of time but he told me it's the one thousand he's like bro [*unintelligible*] getting them from the one thousands the strongest shit out bro I promise you gonna see

PENNYWELL: Hope so

SHARIFI: So we got to be patient one more day. Tomorrow morning he'll have the tracking number for me and shit so it'll be there for sure Saturday day.

PENNYWELL: A'ight

SHARIFI: So in the morning when he call me like around 10:00 our time, imma text you the tracking number and shit

20.     I believe this call is a continuation of the prior calls concerning a then pending drug transaction involving PENNYWELL, SHARIFI, SHARIFI's supply source, and an unknown supply source in San Diego, California who is believed to have a direct link to a Mexico-based cartel. Here, I believe SHARIFI tells PENNYWELL that the "package" – containing the drugs -- was ready to be shipped out, however the individual arrived at the U.S. Post Office at 5:00 p.m. and the postal service could not guarantee the package could be delivered the following day. SHARIFI indicates that the source of supply wanted to check with SHARIFI before sending it out because the package would be delayed arriving in Louisiana and to PENNYWELL until Saturday (April 22, 2023). SHARIFI acknowledges the change in plans and tells PENNYWELL, "I just gotta go with the flow" because this was a "new line" and they were doing "the shipping and everything." I believe this shows SHARIFI was using this source of supply – not the person he knew in LA who he referred to as his "people" in a prior call – for the first time. SHARIFI inquires as to whether the address PENNYWELL provided – his home address – was a house or

apartment. PENNYWELL confirms that it is a house.

21.    **SHARIFI** then explains to PENNYWELL the potency of the narcotics changed – instead of getting a "700" that he had them obtain a "thousand" from the supply source in San Diego. **SHARIFI** explains how powerful the narcotics would be. I believe this statement was made to explain the delay in shipping and explain the benefit that PENNYWELL was getting because the drug being shipped is more potent than originally negotiated. **SHARIFI** then explains – "… we got to be patient one more day. Tomorrow morning he'll have the tracking number for me and shit so it'll be there for sure Saturday …" Finally, **SHARIFI** reassures PENNYWELL that he will text him the tracking number for the package upon receiving it from the source.

22.    On or about April 22, 2023, at approximately 4:36 p.m., **PENNYWELL** received an incoming call from the **TARGET TELEPHONE**, believed to be used by **SHARIFI**, with the following content:

> **SHARIFI**: Hello.
>
> PENNYWELL: What's happening bro?
>
> **SHARIFI**: I had just woke up bro, I ain't gonna lie to you n****. I was fucked up. I came in at like 7 in the morning. Shit ain't came yet or what?
>
> PENNYWELL: Shit no.
>
> **SHARIFI**: Did the mail man already pass by?
>
> PENNYWELL: No. I Shit. I ain't even know what to do. I had went to my I had I didn't know if I was supposed to sit in the house or…
>
> **SHARIFI**: No. You can sit at the house and cool and shit. I just literally seen your call and I hit my podnuh cuz he was supposed to pull up on me yesterday. He said he just text me back [*unintelligible*] said I'm just getting up. He says [*unintelligible*] brown company.  What's he sayin'? Let me text him. Hold on I'm sayin' is somebody at the house or no?

14

PENNYWELL:  Shit. No. Nobody was at the house but, shit, I can rewind the camera.

**SHARIFI**: I'm sayin' like nobody's gonna steal something off the porch, will they?

PENNYWELL: Shit, no. I don't stay in no neighborhood like that.

**SHARIFI**: Oh. Yeah. Yeah. Let me see uh. Hold on. I'm texting this guy. Yeah. He uh we should uh …

PENNYWELL: I been pulling my hair out, man. My son had a - my son had a track meet.  My girl, she wanted I'm like, I got something supposed to be coming but …

**SHARIFI**: But sometimes it be coming like last time they dropped it off [*unintelligible*].  That bitch came at 9:00 at night but let me see I'm gonna get the tracking number. I don't, like, I don't like tracking shit like... I just wait for the day of type shit you know what I'm sayin'?  If it don't come, then I'll track it. But let me I got to get the tracking number with him. He was supposed to give it to me last night. That way, we can see exactly where it's at. He told me next day service.

PENNYWELL: Shit, man

**SHARIFI**: And this n****, this n****, this ain't no regular these n***** are to the T.  You know what I'm sayin'? These n***** are on time and everything.

PENNYWELL: Shit. My shit blowing up. I'm talking about man.

**SHARIFI**: No, he told he was uh it's next day, so let me call him. I just got up. Give me a second, Bo. I'll call you right back.

    23.    I believe this call concerns the drug transaction discussed previously amongst PENNYWELL, **SHARIFI**, **SHARIFI**'s source in Los Angeles, and **SHARIFI**'s source's partner who appears to reside in San Diego and likely has ties to a Mexican cartel. I believe that PENNYWELL had been trying to reach **SHARIFI** because the drugs had not been delivered as

planned. **SHARIFI** asks PENNYWELL if the package arrived -- "Shit ain't came yet or what?" He then asks PENNYWELL if anyone was at the house, to which PENNYWELL replied no, but he "can rewind the camera."

24.    Based on the prior calls described above, I believe that PENNYWELL is expecting the package containing the drugs to arrive at his address, 2597 Brady Avenue, Zachary, Louisiana that day. **SHARIFI** then states that he would call his "podnuh cuz he was supposed to pull up on me yesterday ... He says [*unintelligible*] brown company."  I assert that **SHARIFI**'s partner's reference to "brown company" means that the package is being sent by United Parcel Service ("UPS"). PENNYWELL says that he has "been pulling [his] hair out, man" because the drugs had not arrived. **SHARIFI** starts to reassure PENNYWELL that he did not need to worry, and he would get the tracking number. **SHARIFI** then states, "I don't like tracking shit like... I just wait for the day of type shit you know what I'm sayin'?  If it don't come, then I'll track it. But let me I got to get the tracking number with him [**SHARIFI**'s supply source]." **SHARIFI** attempts to reassure PENNYWELL further that his narcotics supplier is reliable, when he says "[t]hese n***** are on time and everything." PENNYWELL tells **SHARIFI** that his "phone is blowing up," which I believe means there are customers waiting for the drugs. The call ends with **SHARIFI** referring to PENNYWELL as "Bo" – his street moniker – and promising to call him back once he talks to his supplier.

25.    Agents contacted UPS after reviewing this call. On or about April 25, 2023, UPS notified the FBI they had received a package addressed to Brenda Miera, address of 2597 Brady Avenue, Zachary, Louisiana 70791, tracking number 1Z T12 D1L 01 0994 1028. Agents responded to UPS located at 30380 Rosenwald Road, Baton Rouge, Louisiana. BRPD K-9 handler Cpl. Brad Bickham, who has been a canine handler for 15 years, accompanied the agents to UPS.

Cpl. Bickham is partnered with K-9 "Narco," who has been certified for 3 years to detect narcotics by the United States Police Canine association. Upon arrival, UPS personnel pulled the package and "Narco" alerted to the package in a manner indicating the presence of narcotics. The return address on the package showed an address in Ethel, Louisiana. However, a log for tracking number 1Z T12 D1L 01 0994 1028 showed the package was dropped off in Chula Vista, California on April 24, 2023. After "Narco" alerted, the package was secured. The Honorable United States Magistrate Judge Erin Wilder-Doomes of the Middle District of Louisiana was presented with a search warrant, which the Judge authorized the same day in Case Number 23-MJ-43. Upon searching the package, agents found approximately one kilogram of an unknown substance that has been sent to the Louisiana State Police Lab for analysis.

26.     Per an administrative subpoena, the subscriber of the **TARGET TELEPHONE** as detailed in footnote 1 above has not changed. And in light of the recent calls involving the **TARGET TELEPHONE** detailed above, there is probable cause to believe that **SHARIFI** will continue to use the **TARGET TELEPHONE**, which will allow agents to conduct physical surveillance from a safe distance and gather intelligence needed to further this investigation.

27.     In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the location of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell

17

towers. Cell0site data identifies the "cell towers" (i.e. antenna towers covering specific geographic area) that received a radio signal from the cellular telephone and, an in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers area often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

28.     In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

29.     Based on my training and experience, I know that AT&T can collect cell-site data about the **TARGET TELEPHONE**.  Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1)

the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

30.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

31.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the **TARGET TELEPHONE** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

19

32.     I further request that the Court direct AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T. I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T services, including by initiating a signal to determine the location of the **TARGET TELEPHONE** on AT&T network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

33.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **TARGET TELEPHONE**  outside of daytime hours.

34.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Jessica Sullivan, Special Agent
Federal Bureau of Investigation

Affidavit submitted by email/PDF and attested to me as true and accurate by telephone consistent with Federal Rules of Criminal Procedure 4.1 and 41(d)(3) on the 9th day of May 2023.

_____
ERIN WILDER-DOOMES, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **(415) 290-1187** (the "**TARGET TELEPHONE**), whose wireless service provider is AT&T, a wireless telephone service provider at 11760 US Highway 1, STE. 600, North Palm Beach, Florida 33408, which is being utilized by **MOHAMMAD MASHOOD SHARIFI, a/k/a "Moe," a/k/a "Bankrollmoe" ("SHARIFI**").

2. Records and information associated with the **TARGET TELEPHONE** that is within the possession, custody, or control of AT&T, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

1

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be Disclosed by the Provider**

Information regarding the location of the **TARGET TELEPHONE** described in Attachment A for a period of thirty (30) days, during all times of day and night. Information about the location of the **TARGET TELEPHONE** includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, including information generated by the "real-time tool", as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government. In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T services, including by initiating a signal to determine the location of the **TARGET TELEPHONE** on AT&T network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

2

## II.    Information to Be Seized by the Government

Information described above in Section I that will assist in monitoring **SHARIFI**'s location including his participation in illegal narcotics activity.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means    ❏ Original    ❏ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH THE CELLULAR<br>DEVICE ASSIGNED CALL NUMBER (415) 290-1187 THAT<br>IS STORED AT PREMISES CONTROLLED BY AT&T | )<br>)<br>)<br>)<br>)<br>)    Case No.  23-MJ-49 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Southern_____ District of _____Florida_____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____May 22, 2023_____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.    ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Erin Wilder-Doomes_____ .
*(United States Magistrate Judge)*

☒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☒ for _30_ days *(not to exceed 30)*  ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:    _____May 9, 2023, 4:30 p.m._____        _Erin Wilder-Doomes_
*Judge's signature*

City and state:    Baton Rouge, Louisiana        Erin Wilder-Doomes, U.S. Magistrate Judge
*Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>23-MJ- 49 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| Certification |
|---|
|      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.<br><br><br>Date: _____                _____<br>                                                      *Executing officer's signature*<br><br>                                    _____<br>                                                         *Printed name and title* |

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **(415) 290-1187** (the "**TARGET TELEPHONE**), whose wireless service provider is AT&T, a wireless telephone service provider at 11760 US Highway 1, STE. 600, North Palm Beach, Florida 33408, which is being utilized by **MOHAMMAD MASHOOD SHARIFI, a/k/a "Moe," a/k/a "Bankrollmoe"** ("**SHARIFI**").

2. Records and information associated with the **TARGET TELEPHONE** that is within the possession, custody, or control of AT&T, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

1

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be Disclosed by the Provider**

Information regarding the location of the **TARGET TELEPHONE** described in Attachment A for a period of thirty (30) days, during all times of day and night. Information about the location of the **TARGET TELEPHONE** includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, including information generated by the "real-time tool", as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government. In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T services, including by initiating a signal to determine the location of the **TARGET TELEPHONE** on AT&T network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

2

## II.    Information to Be Seized by the Government

Information described above in Section I that will assist in monitoring **SHARIFI**'s location including his participation in illegal narcotics activity.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER **(415) 290-1187** THAT IS STORED AT PREMISES CONTROLLED BY AT&T | 23-MJ-49<br><br>**Filed Under Seal** |

## MOTION TO SEAL APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT, SEARCH WARRANT AND SEARCH WARRANT RETURN

NOW INTO COURT comes the United States of America, by Ronald C. Gathe, Jr., United States Attorney for the Middle District of Louisiana, through William K. Morris, Assistant United States Attorney, who respectfully represents the following:

1.

The United States moves to seal the application and affidavit for search warrant, the search warrant, the search warrant return, and any other filings in the above-captioned matter to protect the integrity of an investigation into members of a violent street gang.

2.

Publication of this application and affidavit for search warrant, search warrant, search warrant return and any other filings in this matter, at this time, would prejudice an ongoing federal criminal investigation.

3.

WHEREFORE, the United States respectfully requests that this Honorable Court issue an Order sealing this motion and order, the application and affidavit for search warrant, search warrant, search warrant return, and any other filings in this matter, until further ordered by this Court.

UNITED STATES OF AMERICA, by

RONALD C. GATHE, JR.
UNITED STATES ATTORNEY


/s/ William K. Morris
William K. Morris, LBN 28694
Assistant United States Attorney
777 Florida Street, Suite 208
Baton Rouge, Louisiana   70801
Telephone: (225) 389-0443
Fax: (225) 389-0561
E-mail: william.morris2@usdoj.gov

2

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH THE
CELLULAR DEVICE ASSIGNED CALL
NUMBER **(415) 290-1187** THAT IS
STORED AT PREMISES CONTROLLED
BY AT&T

23-MJ-49

**Filed Under Seal**

## ORDER

Considering the Government's Motion to file documents under seal,

IT IS HEREBY ORDERED, that this Motion and Order, the application and affidavit for

search warrant, search warrant, search warrant return, and any other filings in this matter, be sealed

until further order from the Court.

Baton Rouge, Louisiana, this __9th__ day of May, 2023.


_____
ERIN WILDER-DOOMES, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| | ) | 23-mj-52 |
| ROBERT PENNYWELL and | ) | |
| MOHAMMAD SHARIFI | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _April 19, 2023 to April 25, 2023_ in the county of _East Baton Rouge_ in the

_Middle_ District of _Louisiana_ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21:846 | Conspiracy to possess with intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

*Michael Landenwich*

*Complainant's signature*

Michael Landenwich, FBI Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirement of Fed. R. Crim. P. 4.1 by
_telephone_ (*specify reliable electronic means*).

Date: _May 18, 2023_

*Judge's signature*

City and state: _Baton Rouge, LA_ Scott D. Johnson, U. S. Magistrate Judge

*Printed name and title*

USA Sealed Group
USM
USPO

U.S. Exhibit

B

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

Your affiant, Michael Landenwich, a Special Agent with the Federal Bureau of Investigation ("FBI"), being duly sworn, deposes and states as follows:

1.      I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2.      I am a Special Agent with the FBI and have been so employed since September of 2021. I am currently assigned to the FBI-New Orleans Field Office/Baton Rouge Resident Agency (RA), and I have been assigned there since March of 2022. Prior to my time with the FBI, I spent approximately 14 years serving in law enforcement in the state of Alabama. My time in law enforcement in the state of Alabama was split between the Loxley Police Department and the Baldwin County Sheriff's Office. With both agencies, I served as a marked unit on patrol and a narcotics investigator. I currently am assigned to the New Orleans Capitol Area Gang Task Force investigating gangs, drugs, robberies, and other violent crimes in the Baton Rouge area. As an FBI Special Agent, I have personally participated in the instant investigation and have reviewed information received by law enforcement partners and open-source reporting pertaining to matters in this investigation.

3.      My investigative training and experience includes, but is not limited to, conducting surveillance; interviewing subjects, targets and witnesses; writing affidavits for and executing search and arrest warrants; examining cellular telephones; managing confidential human sources and cooperating witnesses/defendants; collecting evidence; and analyzing public records. I have participated in investigations involving the interception of

wire and electronic communications devices, and I am familiar with the ways in which drug traffickers conduct their business, including, but not limited to, their methods of importing and distributing drugs, their use of cellular telephones, and their use of numerical codes and code words to conduct their transactions.

4.    I submit that the facts contained in this Affidavit show that there is probable cause to believe that **ROBERT PENNYWELL** ("**PENNYWELL**") and **MOHAMMAD SHARIFI** ("**SHARIFI**"), and others known and unknown, have violated Title 18, United States Code, Section 846 – conspiracy to possess with intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl.

5.    Because this affidavit is being submitted for the limited purpose of securing a criminal complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are sufficient to establish probable cause to believe that a violation of the aforementioned statute exists.

6.    The information contained within the affidavit is based on my training and experience, as well as information imparted to me by other agents and law enforcement officers involved in this investigation.

## STATEMENT OF FACTS

7.    In or about November 2022, the FBI began an investigation into **PENNYWELL**, and others known and unknown, for trafficking Schedule I and II controlled substances in, among other places, the Baton Rouge, Louisiana area, which is in the Middle District of Louisiana.

8.      On or about March 16, 2023, Chief United States District Judge Shelly D. Dick of the United States District Court for the Middle District of Louisiana signed an order authorizing the interception of wire communications occurring over TARGET TELEPHONE THREE, a cellular telephone assigned telephone number 225-371-0522, which agents believed was being used by **PENNYWELL**. On or about April 18, 2023, United States District Judge Brian A. Jackson of the United States District Court for the Middle District of Louisiana singed an Order authorizing the renewal of interceptions over TARGET TELEPHONE THREE. Interception is currently ongoing and is scheduled to terminate on May 18, 2023.

9.      Between April 19, 2023 and April 22, 2023, interceptions revealed arrangements between **PENNYWELL** and **SHARIFI**, a resident of California, for the shipment of a kilogram of a then unknown controlled substance from California to **PENNYWELL** at his residence in Zachary, Louisiana, which is in the Middle District of Louisiana**.**

a.      Agents were able to identify **SHARIFI** as the user of telephone number 415-290-1187 by reviewing **PENNYWELL**'s Instagram Account "blackbo_rob" which follows an individual referred to as "Bankrollmoe." Agents reviewed user information for the "Bankrollmoe" account which showed a tribute to "ripgrandfather" with a photo of the headstone for Abdoullah Naik. Public database searches indicate **SHARIFI** was an associate of Naik. Agents compared the photograph on a passport believed to belong to **SHARIFI** and that was believed to be used by **SHARIFI** when returning to the United States from Cancun, Mexico on March 12, 2020 with photos on the Instagram account

"Bankrollmoe." This comparison led to agents to positively identify the user of the Instagram account "Bankrollmoe" as **SHARIFI**.

b.      Also, I am aware that the user of telephone number 415-290-1187, believed to be **SHARIFI**, has indicated he is of Middle Eastern descent and from the Oakland area of California. **SHARIFI** has referenced his Middle Eastern descent on his Instagram account. The user of telephone number 415-290-1187 has also indicated he has an outstanding warrant for his arrest. **SHARIFI** has a current arrest warrant for failure to appear in Solana County, California for weapons charges. **SHARIFI** also has a prior felony conviction for possession of narcotics in a penal institution.

10.     The Court-authorized wire interceptions further revealed that the package containing the suspected controlled substance was being shipped from California to **PENNYWELL** at his address of 25** Brady Avenue, Zachary, Louisiana, which is in the Middle District of Louisiana. I also learned that the package was being shipped via the United Parcel Service (UPS). Agents contacted UPS and requested that they notify the FBI when the package arrived in Baton Rouge.

11.     On or about April 20, 2023, **PENNYWELL** received an incoming call from a phone assigned call number 415-290-1187, believed to be used by **SHARIFI**, with the following content[1]:

…

**SHARIFI**: It's a house not an apartment, right?

---

[1] All transcriptions are preliminary and subject to change.

4

**PENNYWELL**: Yea it's a house.

**SHARIFI:** Yea, yea, yea because they said get there around 5 today, initially I was going to get a 700 from them, I was going to get 700 which is hella powerful and hella strong he had 1000 available I told 'em Louisiana wants the strong shit so he switched them out the 700 and picked up 1000 in San Diego. 1000 strongest shit out

**PENNYWELL**: Hope so.

**SHARIFI**: We got to be patient tomorrow morning we will have a tracking number, when he calls me, I'll text you the tracking number.

**PENNYWELL**: A'ight bro.

**SHARIFI**: A'ight bet.

12.    I believe this call concerns a shipment of an unknown controlled substance from California, where **SHARIFI** is known to reside, to a residential address **PENNYWELL** provided to **SHARIFI** in the Baton Rouge, Louisiana area. My belief is based on **SHARIFI**'s initial question – whether the address was a house or an apartment to which **PENNYWELL** responded "…it's a house." I further believe that when **SHARIFI** told **PENNYWELL** "they said it would get there around 5 today" that he is referring to a package. I assert that when **SHARIFI** explained "… I was going to get 700 which is hella powerful and hella strong he had 1000 available I told 'em Louisiana wants the strong shit so he switched them out the 700 and picked up 1000 in San Diego. 1000 strongest shit out" that **SHARIFI** was telling **PENNYWELL** the potency of the unknown controlled substance was increased from the original 700 value to 1000 value, which is the strongest available for that controlled substance. When **PENNYWELL** responded, "[H]ope so," I believe he was showing his desire to sell the more potent controlled substance. Additionally, I assert that **SHARIFI** encouraged **PENNYWELL** that they "need to be patient" and that they will have a tracking number, which

would allow them to determine the package's location and delivery status the following day. I aver that this call reflected **SHARIFI**'s and **PENNYWELL**'s knowledge that the package contained a controlled substance and their partnership with each other and others known and unknown to ship a controlled substance from California to **PENNYWELL** in the Baton Rouge, Louisiana area. Agents learned subsequent to this conversation that the address **PENNYWELL** provided **SHARIFI** was the house in which **PENNYWELL** resides at 25** Brady Avenue, Zachary, Louisiana, which is in the Middle District of Louisiana.

13.    On or about April 22, 2023, **PENNYWELL** received an incoming call from a telephone assigned call number 415-290-1187, believed to be used by **SHARIFI**, with the following content:

> **SHARIFI**: Hello.
>
> **PENNYWELL**: What's happening bro?
>
> **SHARIFI**: I had just woke up bro, I ain't gonna lie to you n****. I was fucked up. I came in at like 7 in the morning. Shit ain't came yet or what?
>
> **PENNYWELL**: Shit no.
>
> **SHARIFI**: Did the mail man already pass by?
>
> **PENNYWELL**: No. I Shit. I ain't even know what to do. I had went to my I had I didn't know if I was supposed to sit in the house or…
>
> **SHARIFI**: No. You can sit at the house and cool and shit. I just literally seen your call and I hit my podnuh cuz he was supposed to pull up on me yesterday. He said he just text me back [*unintelligible*] said I'm just getting up. He says [*unintelligible*] brown company.  What's he sayin'? Let me text him. Hold on I'm sayin' is somebody at the house or no?
>
> **PENNYWELL**:  Shit. No. Nobody was at the house but, shit, I can rewind the camera.

6

**SHARIFI**: I'm sayin' like nobody's gonna steal something off the porch, will they?

**PENNYWELL**: Shit, no. I don't stay in no neighborhood like that.

**SHARIFI**: Oh. Yeah. Yeah. Let me see uh. Hold on. I'm texting this guy. Yeah. He uh we should uh …

**PENNYWELL**: I been pulling my hair out, man. My son had a - my son had a track meet.  My girl, she wanted I'm like, I got something supposed to be coming but …

**SHARIFI**: But sometimes it be coming like last time they dropped it off [*unintelligible*].  That bitch came at 9:00 at night but let me see I'm gonna get the tracking number. I don't, like, I don't like tracking shit like... I just wait for the day of type shit you know what I'm sayin'?  If it don't come, then I'll track it. But let me I got to get the tracking number with him. He was supposed to give it to me last night. That way, we can see exactly where it's at. He told me next day service.

**PENNYWELL**: Shit, man

…

14.    Based on the investigation to date, I believe this call concerns a drug transaction among **PENNYWELL**, **SHARIFI**, and **SHARIFI**'s source of supply in the Los Angeles/San Diego area. I believe this call shows that **PENNYWELL** had been trying to reach **SHARIFI** because the drugs had not been delivered as planned. **SHARIFI** asked **PENNYWELL** if the package arrived -- "Shit ain't came yet or what?" **SHARIFI** then asked **PENNYWELL** if anyone was at the house, referring to **PENNYWELL's** residence located at 25** Brady Avenue, Zachary, Louisiana.   I believe that **PENNYWELL** was expecting the package containing the drugs to be sent via UPS – referred to as the "brown company – and to arrive at his address, 25** Brady Avenue, Zachary, Louisiana that day. **PENNYWELL** told **SHARIFI** that he has "been pulling [his] hair out, man" because the drugs had not arrived, which I believe

7

shows that the package containing the drugs was intended to be delivered to him and not anyone else at the 25** Brady Avenue, Zachary, Louisiana address.

15.     On or about April 25, 2023, UPS notified the FBI they had received a package addressed to B.M., address of 25** Brady Avenue, Zachary, Louisiana 70791, tracking number 1Z T12 D1L 01 0994 1028. I am aware that this address is where **PENNYWELL** resides and there is no record of B.M. presently residing there. Property records show that B.M. sold the residence at 25** Brady Avenue to E.G., who is believed to be **PENNYWELL**'s wife/paramour and currently resides in the house with **PENNYWELL** and their minor children. The return address on the package showed an address in Ethel, Louisiana. The return addressee is C.S., and public records show a connection between the Ethel address and C.S. However, UPS informed agents that a log for tracking number 1Z T12 D1L 01 0994 1028 showed the package entered the UPS system in Chula Vista, California on April 24, 2023.

16.     Agents responded to the UPS Facility, which is in the Middle District of Louisiana. A Baton Rouge Police K-9 handler and his K-9 partner "Narco," a certified narcotic detection dog, met agents at the UPS Facility. UPS personnel separated the above-described package and "Narco" alerted to the package in a manner indicating the presence of narcotics. After "Narco" alerted, the package was secured. That same day, the Honorable Judge Erin Wilder-Doomes, United States Magistrate, was presented with and authorized a search warrant for the package in Cause Number 23-mj-43. Upon searching the package pursuant to the search warrant, agents found approximately one kilogram of an unknown substance that was sent to the Louisiana State Police Lab for analysis. The Louisiana State Police Lab has determined that the substance is fentanyl with a recorded net weight of approximately 999.90 grams.

17.    Based on the above information, I believe that there is probable cause to believe that **PENNYWELL**, **SHARIFI** and others, known and unknown, did violate Title 18, United States Code, Section 846 – conspiracy to possess with intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully submitted,

*Michael Landenwich*

Michael Landenwich
Special Agent, FBI


Affidavit submitted by email/.pdf and attested to me as true and accurate by telephone consistent with Federal Rules of Criminal Procedure 4.1 and 41(d)(3) on May __18__, 2023.

SCOTT D. JOHNSON, MAGISTRATE JUDGE
UNITED STATES DISTRIC COURT
MIDDLE DISTRICT OF LOUISIANA

9

## <u>ATTACHMENT A</u>

### Property to Be Searched

1. The cellular telephone assigned call number **(415) 640-8583** (the "**TARGET TELEPHONE**), whose wireless service provider is AT&T, a wireless telephone service provider at 11760 US Highway 1, STE. 600, North Palm Beach, Florida 33408, which is being utilized by **MOHAMMAD MASHOOD SHARIFI, a/k/a "Moe," a/k/a "Bankrollmoe" ("SHARIFI")**.

2. Records and information associated with the **TARGET TELEPHONE** that is within the possession, custody, or control of AT&T**,** including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be Disclosed by the Provider**

Information regarding the location of the **TARGET TELEPHONE** described in Attachment A for a period of thirty (30) days, during all times of day and night. Information about the location of the **TARGET TELEPHONE** includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, including information generated by the "real-time tool", as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government. In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T services, including by initiating a signal to determine the location of  the **TARGET TELEPHONE** on AT&T network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to Be Seized by the Government

Information described above in Section I that will assist in monitoring **SHARIFI's** location including his participation in illegal narcotics activity.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant and aid in effecting **SHARIFI's** arrest.

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means          ☑ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No.  23-MJ- 57 |
| INFORMATION ASSOCIATED WITH THE CELLULAR | ) |
| DEVICE ASSIGNED CALL NUMBER 415-640-8583 THAT | ) |
| IS STORED AT PREMISES CONTROLLED BY AT&T | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Southern_____ District of _____Florida_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before   June 15, 2023    *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Richard L. Bourgeois, Jr._____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    6/1/2023 at 3:01pm _____        _____
*Judge's signature*

City and state:        Baton Rouge, Louisiana _____        Richard L. Bourgeois, Jr., U.S. Magistrate Judge
*Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br><br>23-MJ- 57 | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

| **Certification** |
|---|

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1.  The cellular telephone assigned call number **(415) 640-8583** (the "**TARGET TELEPHONE**), whose wireless service provider is AT&T, a wireless telephone service provider at 11760 US Highway 1, STE. 600, North Palm Beach, Florida 33408, which is being utilized by **MOHAMMAD MASHOOD SHARIFI, a/k/a "Moe," a/k/a "Bankrollmoe" ("SHARIFI")**.

2.  Records and information associated with the **TARGET TELEPHONE** that is within the possession, custody, or control of AT&T, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

1

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be Disclosed by the Provider**

Information regarding the location of the **TARGET TELEPHONE** described in Attachment A for a period of thirty (30) days, during all times of day and night. Information about the location of the **TARGET TELEPHONE** includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, including information generated by the "real-time tool", as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government. In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T services, including by initiating a signal to determine the location of  the **TARGET TELEPHONE** on AT&T network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

**II.**     **Information to Be Seized by the Government**

Information described above in Section I that will assist in monitoring **SHARIFI's** location including his participation in illegal narcotics activity.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant and aid in effecting **SHARIFI's** arrest.